# In the United States Court of Federal Claims

No. 18-967
Filed: July 29, 2019

|  |  |  |
|---|---|---|
| BRENDA MORECRAFT, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Failure to State a Claim; RCFC 12(b)(6); Lack of Subject-Matter Jurisdiction; RCFC 12(b)(1) |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

*Christopher Joseph Trombetta*, Office of Christopher J. Trombetta, Mansfield, MA, counsel for plaintiffs.

*Antonia Ramos Soares*, U.S. Department of Justice, Civil Division, Washington, D.C., counsel for defendant.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

On July 6, 2018, plaintiffs filed their Complaint with this Court. *See generally* Complaint. Plaintiffs then submitted an amended complaint on December 17, 2018. *See generally* Amended Complaint (hereinafter "Am. Compl."). In their Amended Complaint, plaintiffs allege, *inter alia*, that the United States Department for Veterans' Affairs ("VA") underpaid them and similarly situated persons. They allege that the Providence, Rhode Island VA Medical Center did not secure a special pay rate or conduct a local labor survey, and as a result, their salaries have been lower than comparable employees of different VA locations. Additionally, plaintiffs allege that the VA has not paid them overtime wages. Plaintiffs seek money damages in the amount of $52 million. On March 11, 2019, defendant filed its motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). For the following reasons, the Court grants defendant's Motion to Dismiss.

**I.     Background**

Plaintiffs, Brenda Morecraft and Kristin Melendez, are both Licensed Practical Nurses ("LPNs") and GS 6 employees who work at the VA Community Based Outpatient Clinic ("CBOC") in Hyannis, Massachusetts. *See* Am. Compl. at 2. The CBOC is governed by its parent, VA Medical Center in Providence, Rhode Island ("PVAMC"). *Id.* Plaintiffs each receive a salary of $49,464 per year. *Id.* at 4. Ms. Morecraft has worked at the VA for over ten years, and Ms. Melendez has worked at the VA for over three years. *Id.*

The salaries of LPNs at the Plymouth, Massachusetts VA CBOC—which is 22 miles from Hyannis—are $13,770 more than plaintiffs' current salaries. *Id.* at 4. Additionally, plaintiffs claim that officials at the Hyannis CBOC "have stated on numerous occasions that the amounts paid to Ms. Morecraft and Ms. Melendez are grossly deficient." *Id.* at 6. For example, the Associate Chief of Hyannis CBOC, Dr. Monty Vanbeber, stated that "the LPN pay is at least ten thousand dollar [sic] less than private sector so we don't even bother advertising." *Id.* The VA's Patient Aligned Care Team model "indicates that the Hyannis facility should have five LPNs but currently only employs two because additional LPNs cannot be recruited." *Id.* at 7. Employees of the Hyannis CBOC have been paid according to a pay table for Narragansett, Rhode Island. *Id.* at 5. In comparison, the pay table for Providence, Rhode Island, provides for higher salaries. Am. Compl. at 8.

On several occasions, plaintiffs contacted VA officials about their low salaries. *Id.* at 5–6. In a letter dated March 27, 2018, Susan A McKenzie, Medical Director of PVAMC, stated that "there is no significant pay disparity between the salary survey data and the current pay table for the Hyannis CBOC," therefore, "a change to the special salary rate is not needed at this time." Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint (hereinafter "Pl. Resp."), Exhibit B (March 27, 2018 Letter). In a letter to Congressman Keating, Peter Shelby, Assistant Secretary for Human Resources and Administration for the VA, stated that the "CBOC [in Hyannis] is not experiencing recruitment or retention issues . . . [and] competitive adjustments to LPN pay in Hyannis are not justifiable at this time." *Id.*, Exhibit D (Letter to Congressman Keating). Also, in an email dated April 8, 2018, Jessica Bonjorni, Chief Officer of VHA's Workforce Management & Consulting, stated that "there is no evidence to support that the salary rates established for LPNs at the Hyannis CBOC are in violation of regulation or policy." *Id.*, Exhibit E (April 8, 2018 Letter).

Ms. Melendez sent a Freedom of Information Request ("FOIA") asking for copies of the labor surveys pertaining to the PVAMC over the last twelve years. Am. Compl. at 7. On February 23, 2018, the VA sent Ms. Melendez a survey conducted by Korn Ferry, which stated that there was "insufficient data to report" in its comparison of Hyannis LPNs and private sector positions. *Id.* at 8, Exhibit J (Korn Ferry Survey). The survey lists the average salary of LPNs in Hyannis. *Id.*, Exhibit J.

## II.     Standard of Review

This Court's jurisdiction is primarily defined by the Tucker Act, which waives sovereign immunity of the United States for claims—not sounding in tort—that are founded upon the Constitution, an Act of Congress, an executive department regulation, or an express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1). The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

A complaint should be dismissed for failure to state a claim upon which relief can be granted "when the facts asserted by the claimant do not entitle him [or her] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (citing *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). When deciding a motion to dismiss under RCFC 12(b)(6), "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff." *Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 259 (2013). To survive a motion to dismiss the complaint must meet the plausibility standard, which means the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, it must contain well-pled factual allegations "respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

### III.  Discussion

In Counts I through IV of their Amended Complaint, plaintiffs allege that the VA failed to secure a special rate and conduct a local labor survey, as obligated by 5 U.S.C. § 5305 and 38 U.S.C. §§ 7404, 7455. *See generally* Am. Compl. As a result, plaintiffs, and similarly situated VA employees, have allegedly been underpaid and are entitled to $13 million. *Id.* at 12–14. They argue that their pay—and other VA employees' pay—is based on either a special rate determined by a local labor market survey or on the fixed rate locality pay percentage, whichever is higher. *Id.* at 3. They further contend that the VA is required to calculate the special rate and locality pay on an annual basis, which is done by comparing VA salaries to comparable positions in the private sector. *Id.* They allege that they have not received an increase in pay because the PVAMC has failed to conduct a labor survey for the last ten to twelve years. *Id.* at 3.

In 1946, Congress created the Veterans Health Administration and established a separate personnel system "to increase recruitment and retention of VA medical employees." *Athey v. United States*, 78 Fed. Cl. 157, 158 (2007). The separate personnel system, title 38, gives the Secretary of Veterans Affairs authority over the VA's personnel matters. *Id.* at 158–59. "Chapter 74 of title 38 authorizes the VA Secretary to hire three categories of employees." *Adams v. United States*, 99 Fed. Cl. 700, 704 (2011). The first category is exclusively governed by title 38 and includes "[p]hysicians, dentists, podiatrists, chiropractors, optometrists, registered nurses, physician assistants, and expanded-function dental auxiliaries." *See id.*; 38 U.S.C. § 7401(1). The second category of VA employees are considered "hybrids" because they are governed by both title 38 and title 5, which oversees general federal civil service employees. *See Adams*, 99 Fed. Cl. at 704. This category is defined under 38 U.S.C. § 7401(3), which lists various health professionals. *See id.* The third category is governed exclusively under title 5 because they are General Schedule civil service employees. *See id.*

Plaintiffs are part of the second category because LPNs are listed under 38 U.S.C. § 7401(3). As such, their employment is governed by titles 5 and 38. *Adams*, 99 Fed. Cl. at 704. The special pay statute under title 5 states:

3

> Whenever the Office of Personnel Management finds that the Government's recruitment or retention efforts with respect to 1 or more occupation in 1 or more areas or locations are, or are likely to become, significantly handicapped . . . the Office *may* establish . . . higher minimum rates of pay for 1 or more grades or levels, occupational groups, series, classes, or subdivisions thereof, and *may* make corresponding increases in all rates of the pay range for each such grade or level.

5 U.S.C. § 5305(a)(1) (emphasis added). Office of Personnel Management ("OPM") further stated that "OPM may increase the minimum rates of pay . . . when it is necessary to address existing or likely significant recruitment or retention difficulties." 5 C.F.R. § 530.304(a). OPM may also establish, or increase, a special rate at a request from an agency only after the agency official has certified that "special rates are necessary to ensure adequate staffing levels to accomplish the agency's mission." 5 C.F.R. § 530.305(a). When evaluating an agency's request, OPM may consider several factors, including "[t]he nature of the existing labor market." 5 C.F.R. § 530.306(a).

The increase in basic pay statute under title 38 states "when the Secretary determines it to be necessary in order to obtain or retain the services of persons described in paragraph (2), the Secretary may increase the minimum, intermediate, or maximum rates of basic pay authorized under applicable statutes and regulations." 38 U.S.C. § 7455(a)(1). Furthermore, increases in rates of basic pay may be made only in order:

> (1) to provide pay in an amount competitive with, but not exceeding, the amount of the same type of pay paid to the same category of personnel at non-Federal facilities in the same labor market;
>
> (2) to achieve adequate staffing at particular facilities; or
>
> (3) to recruit personnel with specialized skills, especially those with skills which are especially difficult or demanding.

38 U.S.C. § 7455(b). The VA Handbook restricts increases in rates of basic pay to situations in which "all recruitment possibilities have been exhausted and full attention has been given to addressing any retention consideration such as working conditions and duty assignments." VA Handbook 5007/52, Part VI, Chapter 6 § 1(c). Thus, a VA employee is entitled to an increase in a rate of basic pay only if the Secretary has found that there is a retention or recruitment issue at the facility and all other remedies have been exhausted.

Plaintiffs' claims under titles 5 and 38 must be dismissed because they did not establish that they are entitled to a special rate or an increase in rate of basic pay. Plaintiffs do not cite, nor allege, that either OPM or the Secretary of the VA have found there to be a retention or recruitment issue at the Hyannis CBOC. *See generally* Am. Comp. Rather plaintiffs base their claim that there is a recruitment problem on statements from officials that work at the Hyannis PVOC. *See id.* at 6–7. These statements are irrelevant to their claim because the OPM, the Secretary of the VA, and Human Resource Management Officers of the VA are the only officials designated to make this formal assessment. *See* 5 U.S.C. § 5301(a)(1); *see also* 38 U.S.C. §

4

7455(a); *see also* VA Handbook 5007/46, Part VI, Chapter 6 § 4(d). Plaintiffs actually provided a letter from Peter Shelby, Assistant Secretary for Human Resources and Administration for the VA, that stated that the "CBOC [in Hyannis] is not experiencing recruitment or retention issues . . . [and] competitive adjustments to LPN pay in Hyannis are not justifiable at this time." Pl. Resp., Exhibit D. As such, plaintiffs failed to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, because they failed to demonstrate that they are entitled to a special rate or an increase in rate of basic pay. Additionally, plaintiffs claim that the government violated the law by not conducting local labor surveys to determine retention and recruitment issues. *See* Am. Compl. at 12–13. This argument also fails to state a claim upon which relief can be granted because neither title 5 nor title 38 require the government to conduct a local labor survey when determining the existence of a retention or recruitment issue. *See* 5 U.S.C. § 5301; *see also* 38 U.S.C. § 7455. For such reasons, Counts I through IV of plaintiffs' Amended Complaint are dismissed.

In Count V, plaintiffs allege that the "VA has failed to pay plaintiffs overtime wages exceeding $9,000,000." *Id.* at 14. As such, plaintiffs claim entitlement to this amount pursuant to the Fair Labor Standards Act. *Id.* (citing 29 U.S.C. § 201). Similarly, in Count VI, plaintiffs allege that the VA has failed to pay them $30,000,000 for overtime wages, which plaintiffs are entitled to under the Fair Labor Standards Act ("FLSA"). *Id.* (citing 29 U.S.C. § 201). The FLSA requires overtime compensation for work performed in excess of forty hours per week "at rates not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(b)(2). To prevail on a FLSA claim for overtime pay, plaintiffs must establish two elements. *See Bull v. United States*, 68 Fed. Cl. 212, 220 (2005). First, "plaintiffs must establish that each activity for which overtime compensation is sought constitutes 'work.'" *Id.* To constitute work, "plaintiff must prove that the activity was (1) undertaken for the benefit of the employer; (2) known or reasonably should have been known by the employer to have been performed; and (3) controlled or required by the employer." *McClendon v. United States*, 127 Fed. Cl. 654, 657 (2016) (citing 5 C.F.R. §§ 551.401(a), 551.104, 551.402(a)). Second, plaintiffs must prove that the hours worked are actually compensable. *Bull*, 68 Fed. Cl. at 220. To be compensable, the amount of time "claimed by the plaintiffs must not be de minimis, and must be reasonable in relation to the principal activity." *Id.*

Plaintiffs' FLSA claims are dismissed because they did not plead factual allegations "respecting all the material elements necessary to sustain recovery" under the FLSA. *See e.g. Twombly*, 550 U.S. at 562. In their Amended Complaint, plaintiffs simply make a naked assertion that the "VA has failed to pay plaintiffs overtime wages exceeding $9,000,000." Am. Compl. at 14. Such assertions are inadequate to state a claim because "[n]aked assertions devoid of 'further factual enhancement'" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). As such, Count V and Count VI of plaintiffs' Amended Complaint are dismissed.

Throughout their Complaint plaintiffs hint at fraud or misrepresentation on the part of the VA. *See generally* Am. Compl. For example, plaintiffs allege that "[t]hey have been given a myriad of baseless and incorrect excuses as to the deficit . . . [and that the PVAMC] has engaged in conduct consisting of lies and attempts to defraud [plaintiffs] to the additional special rate or supplemental pay which they have been entitled." *Id.* at 5. Moreover, plaintiffs allege that the

"[PVAMC] is intentionally causing the figures to appear too low." *Id.* at 8.  To the extent plaintiffs raise any fraud or misrepresentation claims in their Amended Complaint, the Court dismisses these claims for lack of jurisdiction pursuant to RCFC 12(b)(1).

On July 10, 2019, plaintiffs filed a motion for leave to file a supplemental memorandum.  Defendant filed its Response to plaintiffs' Motion for Leave to File a Supplemental Brief ("Response") on July 12, 2019.  As defendant points out in its Response, plaintiffs Supplemental Memorandum merely relitigates issues that the parties addressed under defendant's Motion to Dismiss.  Accordingly, the Court must deny plaintiffs' Motion for Leave to file a Supplemental Memorandum.

### IV. Conclusion

For the reasons set forth in this opinion, defendant's Motion to Dismiss is **GRANTED,** and plaintiffs' claims are **DISMISSED** pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.  Additionally, plaintiffs' Motion for Leave to File Supplemental Memorandum is **DENIED**.  The Clerk is hereby directed to enter judgment consistent with this opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge